BAM/HMG USAO#2022R00661

SEALED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.** DLB 23 cr 449 |
| | * | |
| **v.** | * | **(Conspiracy to Commit Wire Fraud,** |
| | * | **18 U.S.C. § 1349; Wire Fraud, 18** |
| **TEMITOPE BASHUA,** | * | **U.S.C. § 1343; Aggravated Identity** |
| a/k/a "Peppersneh Mega," | * | **Theft, 18 U.S.C. § 1028A; and** |
| | * | **Forfeiture, 18 U.S.C. §§ 981(a)(1)(C),** |
| **Defendant** | * | **21 U.S.C. § 853(p), 28 U.S.C. §** |
| | * | **2461(c))** |
| | * | |
| | * | **UNDER SEAL** |
| | * | |

******

**INDICTMENT**

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud)**

The Grand Jury for the District of Maryland charges that:

**Introduction**

At times relevant to this Indictment:

1.      Defendant **TEMITOPE BASHUA**, **a/k/a Peppersneh Mega ("BASHUA"),** was a citizen of Nigeria and resided in Maryland.

2.      Identity Theft Victim #1, Identity Theft Victim #2, Identity Theft Victim #3, Identity Theft Victim #4, and Identity Theft Victim #6 were real persons living in Maryland. Identity Theft Victim #5 was a real person living in Massachusetts.

3.      The Maryland Department of Labor (MD-DOL) was the state workforce agency ("SWA") that operated the unemployment insurance ("UI") system in Maryland. The California Employment Development Department ("CA-EDD") was the SWA that operated the UI system in California.

4.      MD-DOL and CA-EDD contracted with Bank of America ("BOA") to distribute UI prepaid debit cards to claimants during the Coronavirus Disease 2019 ("COVID-19") pandemic. BOA was a financial institution within the meaning of 18 U.S.C. § 20, and has physical branches, ATMs, teller windows and employees.

5.      Personally Identifiable Information ("PII") included, but was not limited to, name, date of birth, address, social security number, bank account numbers, bank routing numbers, and any other name or number that could be used alone or in connection with any other information to identify a specific individual.

6.      UI benefit applicants to the MD-DOL and CA-EDD used their PII in filing benefits claims, and the SWAs then used that PII in receiving, reviewing, and processing UI claims.

7.      MD-DOL UI claims were received by computer servers located in Virginia, which then routinely transmitted claim information, including, without limitation, claimant names, reports, and payment information, by interstate wire communications to MD-DOL servers located in Maryland.

8.      The United States Small Business Administration ("SBA") was a Federal agency of the United States government that provided support to entrepreneurs and small businesses, including assisting during disasters.

9.      The SBA enabled and provided loans through banks, credit unions, and other lenders. The loans had government-backed guarantees.

### Background on State Unemployment Insurance

10.      UI was a joint state and federal program that provided monetary benefits to eligible beneficiaries.  UI payments were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own.

11.     Beginning in or around March 2020, in response to the COVID-19 pandemic, several federal programs expanded UI eligibility and increased UI benefits, including the Pandemic Unemployment Assistance Program (PUA), Federal Pandemic Unemployment Compensation (FPUC), and the Lost Wages Assistance Program (LWAP). Although these programs were largely administered by state workforce agencies, the federal government funded the increased benefits.

12.     In Maryland and California, those seeking UI benefits submitted online applications. Applicants had to answer specific questions to establish eligibility to receive UI benefits, including their name, Social Security Number (SSN), and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially employed, or unable to work. The MD-DOL and CA-EDD relied upon the information in the application to determine UI benefits eligibility. Once an application was approved, the MD-DOL and CA-EDD distributed state and federal UI benefits electronically to a BOA debit card, which claimants could use to withdraw funds and/or make purchases. The MD DOL and CA-EDD UI debit cards were sent via the U.S. Postal Service by BOA to the address the claimant provided. Claimants could activate their debit card via telephone or online.

## The SBA's Economic Injury Disaster Relief Programs

13.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

14.     The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

15.     Through the CARES Act, the SBA was authorized to provide EIDLs to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.  In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL.  The amount of the advance was determined by the number of employees the applicant certified having.  The advances did not have to be repaid.

16.     In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020.  The applicant was required to also certify that all the information in the application was true and correct to the best of the applicant's knowledge.

17.     EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor.  EIDL applications were received in and processed using computer servers located outside the state of Maryland.  The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the application about employment, revenue, and cost of goods, as described above.  Any funds issued under an EIDL or advance were issued directly by the SBA.  EIDL funds could be used for working capital for fixed debts, payroll expenses, accounts payable, and other bills resulting from the pandemic.

18.     Unlike certain other types of SBA-guaranteed loans, EIDL funds were issued directly from the United States Treasury.  EIDL disbursement payments were initiated by the SBA using computer servers located outside the state of Maryland.

### The Conspiracy and Scheme To Defraud

19.     From at least in or about May 2020 and continuing through at least in or about September 2022, in the District of Maryland and elsewhere, the defendant,

**TEMITOPE BASHUA**
**a/k/a "Peppersneh Mega,"**

and others known and unknown to the Grand Jury, did knowingly and willfully conspire, confederate, and agree to knowingly execute, and attempt to execute, a scheme and artifice to defraud the United States, state workforce agencies, the SBA, and identity theft victims, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, through the use of wire communications, in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

### Manner and Means

20.     It was part of the conspiracy to defraud that **BASHUA** and his co-conspirators obtained the PII of identity theft victims, including names, dates of birth, and social security numbers.

Unemployment Insurance Fraud

21.     It was further part of the conspiracy to defraud that **BASHUA** and his co-conspirators used the PII to submit fraudulent UI claims to the MD-DOL and CA-EDD through use of the Internet.

22.     It was further part of the conspiracy to defraud that **BASHUA** and his co-conspirators caused false and fraudulent representations to be made to the MD-DOL and CA-EDD

in the UI benefit applications, including causing the submission of false information about the identity of the person submitting the UI benefit applications.

23.     It was further part of the conspiracy to defraud that **BASHUA** and his co-conspirators caused the MD-DOL and CA-EDD to approve UI benefit applications based on false and fraudulent information.

24.      It was further part of the conspiracy to defraud that **BASHUA** and his co-conspirators caused the MD-DOL and CA-EDD to deposit UI funds into debit card accounts administered by BOA, thereby resulting in interstate wire communications.

25.     It was further part of the conspiracy to defraud that **BASHUA** and his co-conspirators caused the MD-DOL, CA-EDD and BOA to mail UI related debit cards via the United States Postal Service to residential addresses in the District of Maryland, including **BASHUA**'s residence.

26.     It was further part of the conspiracy to defraud that **BASHUA** and his co-conspirators possessed and attempted to possess UI debit cards bearing the names of the identity theft victims and loaded with UI funds.

27.     It was further part of the conspiracy to defraud that **BASHUA** and his co-conspirators made interstate telephone calls to BOA regarding certain debit cards, including to activate certain cards, resulting in interstate wire communications.

28.     It was further part of the conspiracy to defraud that **BASHUA** and his co-conspirators engaged and attempted to engage in cash withdrawals and point-of-sale transactions using the fraudulently obtained debit cards bearing the names of identity theft victims at ATMs, resulting in interstate wire communications.

Economic Injury Disaster Loan

29.     It was further part of the conspiracy to defraud that **BASHUA** and his co-conspirators opened and caused the opening of multiple bank accounts, including a Citibank account ending in 8318 ("Citi 8318"), a M&T Bank account ending in 1394 ("M&T 1394"), and a Wells Fargo Bank account ending in 9573 ("Wells 9573")  which were registered using the PII of at least two identity theft victims, and used **BASHUA**'s residential address.

30.     It was further part of the conspiracy to defraud that **BASHUA** and his co-conspirators used and caused the use of the PII of identity theft victims when opening Citi 8318, M&T 1394, Wells 9573, including the victims' name, date of birth, and social security number.

31.     It was further part of the conspiracy to defraud that **BASHUA** and his co-conspirators submitted and caused the submission of at least one false and fraudulent EIDL application, which purported to be on behalf of a business entity and used the PII of identity theft victims.

32.     It was further part of the conspiracy to defraud that when **BASHUA** and his co-conspirators caused interstate wire communications when submitting and attempting to submit an EIDL application.

33.     It was further part of the conspiracy to defraud that when **BASHUA** and his co-conspirators caused money from an EIDL application to be disbursed and deposited into Citi 8318, M&T 1394, and Wells 9573, which caused interstate wire communications.


18 U.S.C. § 1349

## COUNTS TWO THROUGH SIX
### (Wire Fraud)

1.       Paragraphs 1 through 18 and 20 through 33 of Count One of this Indictment are hereby incorporated by reference.

2.       On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

**TEMITOPE BASHUA,**
**a/k/a "Peppersneh Mega,"**

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud the Maryland Department of Labor and the United States, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and for the purposes of executing and attempting to execute the scheme to defraud, did knowingly and willfully transmit and cause to be transmitted by means of wire communications, in interstate and foreign commerce, certain writings, sings, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343, as set forth below.

| COUNT | APPROXIMATE DATE | DESCRIPTION | WIRE |
|-------|------------------|-------------|------|
| 2 | Dec. 16, 2020 | Withdrawal of $1,000 from an ATM in the District of Maryland using a debit card ending in 7591 | From Maryland to a location outside Maryland |
| 3 | Dec. 29, 2020 | Withdrawal of $1,000 from an ATM in the District of Maryland using a debit card ending in 5734 | From Maryland to a location outside Maryland |
| 4 | Dec 31, 2020 | Withdrawal of $1,000 from an ATM in the District of Maryland using a debit card ending in 8452 | From Maryland to a location outside Maryland |
| 5 | Jan. 27, 2021 | Withdrawal of $1,000 from an ATM in the District of Maryland using a debit card ending in 6966 | From Maryland to a location outside Maryland |
| 6 | Sept. 21, 2022 | Deposit of $148,825.67 into M&T 1394 | From Maryland to a location outside Maryland |

18 U.S.C. § 1343
18 U.S.C. § 2

**COUNTS SEVEN THROUGH TWELVE**
**(Aggravated Identity Theft)**

1.     Paragraphs 1 through 18 and 20 through 33 of Count One of this Indictment are hereby incorporated by reference.

2.     On or about the dates set forth below, in the District of Maryland and elsewhere, the defendant,

**TEMITOPE BASHUA,**
**a/k/a "Peppersneh Mega,"**

did, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), knowingly possess and use, without lawful authority, a means of identification of another person, during and in relation, Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349, as charged in Count One of this Indictment,  and Wire Fraud, in violation of 18 U.S.C. § 1343, as charged in Counts Two through Six of this Indictment, and as set forth below.

| COUNT | APPROXIMATE DATE | MEANS OF IDENTIFICATION |
|---|---|---|
| 7 | Dec. 16, 2020 | Use of the debit card ending in 7591 bearing the name of Identity Theft Victim #1, during and in relation to Counts One and Two. |
| 8 | Dec. 29, 2020 | Use of the debit card ending in 5734 bearing the name of Identity Theft Victim #2, during and in relation to Counts One and Three. |
| 9 | Dec. 31, 2020 | Use of the debit card ending in 8452 bearing the name of Identity Theft Victim #3, during and in relation to Counts One and Four. |
| 10 | Jan. 27, 2021 | Use of the debit card ending in 6966 bearing the name of Identity Theft Victim #4, during and in relation to Counts One and Five. |
| 11 | Oct. 24, 2020 | Possession of a Wells Fargo Bank card bearing the name of Identity Theft Victim #5, during and in relation to Count One. |

| 12 | Nov. 9, 2020 | Possession of a Citibank bank card ending in 1579 bearing the name of Identity Theft Victim #6, during and in relation to Counts One and Six. |
|----|--------------|---|

18 U.S.C. § 1028A(a)(1)
18 U.S.C. § 2

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1.       Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on any of the offenses charged in Counts One through Six of the Indictment.

### Wire Fraud Forfeiture

2.       Upon conviction of any of the offenses set forth in Counts One through Six, the defendant,

**TEMITOPE BASHUA,**
**a/k/a "Peppersneh Mega,"**

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud, including, but not limited to, a money judgment representing the proceeds he obtained from his participation in the scheme to defraud.

### Substitute Assets

3.       If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

     a.   cannot be located upon the exercise of due diligence

     b.   has been transferred, sold to, or deposited, with a third party

     c.   has been placed beyond the jurisdiction of the court;

     d.   has been substantially diminished in value; or

     e.   has been commingled with other property that cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property up to the value of the

forfeitable property described above, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C.

§ 2461(c).

18 U.S.C. § 981(a)(1)(C).
21 U.S.C. § 853(p).
28 U.S.C. § 2461(c).


Erek L. Barron
United States Attorney


A TRUE BILL:

SIGNATURE REDACTED

Foreperson

Date: 12-13-23

13