

U.S. Department of Justice

*United States Attorney*
*District of Maryland*

---

*Philip Motsay*
*Assistant United States Attorney*
*Philip.Motsay@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4812*
*MAIN: 410-209-4800*
*FAX: 410-962-30717*

November 3, 2025

**VIA ECF**
The Honorable Stephanie A Gallagher
United States District Judge
United States District Court
for the District of Maryland
101 West Lombard Street
Baltimore, MD 21201

Re:   *United States of America v. Temitope Bashua*, Case No. 1:23-cr-00449
         Sentencing Memorandum

Dear Judge Gallagher:

The Government writes this letter in advance of the sentencing of Temitope Bashua, which is currently scheduled for November 17, 2025, at 12:00 pm.

On May 29, 2025, the Court accepted Defendant's guilty plea to Count One of the Indictment, charging the Defendant with Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349, and Count Seven of the Indictment, charging the Defendant with Aggravated Identity Theft, 18 U.S.C. § 1028A.

As set forth herein and in the Sealed Supplement, the Government recommends a sentence of imprisonment and supervised release that are reasonable and are sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18 U.S.C. § 3553(a). The Government further requests that the Court impose restitution totaling $948,714.10, a forfeiture money judgment in the amount of $904,843.36, and special assessments totaling $200.

### I.    Background

As detailed in the parties' plea agreement filed on May 29, 2025 (ECF No. 44), and the Presentence Investigation Report (PSR) filed on July 24, 2025 (ECF No. 47), for over two years– beginning in May 2020 and continuing through September 2022—the Defendant and his coconspirators defrauded State Workforce Agencies, which administered unemployment insurance ("UI") benefits, as well as the U.S. Small Business Administration, which provided Economic Injury Disaster Loans ("EIDLs") to small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. The Defendant's relevant conduct also involved various other fraud schemes, including cyber intrusion, romance fraud, and business email compromise. Defendant's overall conduct resulted in actual losses of $948,714.10.

## II. Guidelines Computation

Defendant's criminal history falls within Category I. ECF No. 47 at 18 ¶ 113. Thus, the applicable guideline imprisonment range for Count One is 41-51 months of imprisonment. *Id.*; U.S.S.G. §5A (Sentencing Table). The applicable guideline imprisonment range as to Count Seven is 24 months consecutive. ECF No. 47 at 18 ¶ 113; U.S.S.G. § 2B1.6; 18 U.S.C. § 1028A(a)(1). Defendant's guidelines range for both offenses is 65-75 months of imprisonment.

## III. Sentencing Factors Under 18 U.S.C. § 3553(a)

The Government's requested sentence is supported by the factors outlined in 18 U.S.C. § 3553(a). Such a sentence is necessary to reflect the seriousness of the offense and protect the public from further crimes of the Defendant, as well as to afford adequate deterrence, promote respect for the law, and provide just punishment. It also accounts for Defendant's history and characteristics, and the need to avoid unwarranted sentencing disparities.

The offenses and the relevant conduct were serious, victimizing both individuals and governmental entities. In the spring of 2020, Congress passed the Coronavirus Aid, Relief and Economic Security (CARES) Act. The CARES Act provided a variety of economic benefits to struggling Americans during a time of severe negative economic impact as a result of the COVID-19 Pandemic. These Pandemic programs were intended to be a lifeline, not a payday. Pandemic funds, meant to aid struggling individuals or businesses, were used by the Defendant and his coconspirators for their own personal enrichment, in excess of $900,000. The Defendant and his coconspirators repeatedly took advantage of programs meant to help those in need.

The Defendant aided the conspiracy and scheme by receiving and distributing funds fraudulently obtained. The Defendant's offenses were not the result of a momentary lapse of judgment. These were not split-second decisions made under financial duress. The offenses were calculated, sophisticated, and protracted. To obtain money from UI claims, the personal identifying information (PII) of real people was used and compromised. To obtain money from EIDLs, fictitious business entities were used, false documentation was provided, and bank accounts were opened in the name of identity victims.

The Government's recommended sentence provides just punishment, promotes respect for the law, affords adequate deterrence, and protects the public from further crimes of the Defendant. The pandemic led to a surge in identity theft and fraud against government programs in 2020 and thereafter, resulting in estimated hundreds of billions of total losses.[1] The COVID-19 Pandemic was not the first, nor will it be the last disaster or pandemic that this country encounters. Given the high levels of fraud in connection with these types of funds, there is a particularly substantial need to promote respect for the law and provide just punishment for the offense. General deterrence is a particularly important sentencing factor in fraud cases such as this one because it is viewed to be effective. *See United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are 'more rational, cool and calculated than sudden crimes of passion or opportunity,' these crimes are prime candidates for general deterrence."); *United States v. Edwards*, 595 F.3d 1004, 1021 (9th Cir. 2010) (Bea, J., concurring) ("[B]ank fraud

---

[1] *See* Richard Lardner et al., The Great Grift: How billions in COVID-19 relief aid was stolen or wasted, Associated Press, June 12, 2023, online available: https://apnews.com/article/pandemic-fraud-waste-billions-small-business-labor-fb1d9a9eb24857efbe461344311ae78 (last accessed Oct. 27, 2025).

. . . tends to be a planned, deliberate crime, which allows plenty of time for reflection, calculation of the odds of success or failure, and the ultimate decision.").

The history and characteristics of the Defendant and the need to avoid unwarranted sentence disparities, however, also merit serious consideration by the Court in determining whether to impose a variant sentence. The instant offenses were committed by the Defendant when he was in his mid-twenties, comprise the Defendant's first and only convictions, and the crimes are non-violent in nature. ECF No. 47 at 13 ¶¶ 70–72. The Defendant also grew up in an environment where he experienced poverty and traumatic childhood incidents. *Id.* at 14 ¶¶ 79, 81. Significantly, the Defendant has admitted and accepted responsibility for his involvement in the offense and the relevant conduct, and used his incarceration as an opportunity to learn and grow. *Id.* at 12 ¶¶ 58–59. By the time of sentencing, the Defendant will have served a substantial period of incarceration—over eighteen (18) months in pretrial detention. *See* ECF No. 12. Finally, the Defendant's guidelines range appears to be disparate from other similar sentences imposed. *See* ECF No. 47 at 26. For the forgoing reasons, the Government's requested sentence is supported by the factors outlined in 18 U.S.C. § 3553(a).

## IV.     Restitution Request

Pursuant to 18 U.S.C. § 3663A and U.S.S.G. §5E1.1, restitution shall be ordered in this case. Restitution may also be ordered to the extent agreed to by the parties in a plea agreement. 18 U.S.C. §§ 3663(a)(3), 3663A(a)(3). The United States respectfully requests that an Order of Restitution be entered, as part of the Defendant's sentence in this matter, in the total amount of $948,714.10. The figure represents losses related to the offenses, as well as the Defendant's relevant conduct. The figure is also supported by the Restitution Exhibits, ECF No. 49 through 49-12, and represents a reduction from the figure represented in the plea agreement.

This Court has the authority to specify the manner that restitution is to be paid. 18 U.S.C. § 3664(i). The Government requests that the Court order that restitution payments be prioritized to individual victims first, business entities second, state government entities third, and the U.S. Small Business Administration last.

The Government will also provide contact information for the payment of restitution to the Courtroom Deputy via a separate document.

## V.     Forfeiture Request

The Government also seeks a forfeiture money judgment in the amount of $904,843.36, equal to the value of the property derived from, or otherwise involved in, the offenses and the Defendant's relevant conduct. This amount also corresponds to the Restitution Exhibits, and represents a reduction from the figure represented in the plea agreement. *See* ECF No. 49 through 49-12. The Government will file a preliminary order of forfeiture in advance of sentencing.

The Government recovered $147,757.72, in connection with the fraudulent EIDL related to Identity Victim # 6. *See* ECF No. 44 at 17. Additional funds in the amount of approximately $123,372.79 will also be sought from the State of South Dakota following entry of judgment, in connection with the fraudulent EIDL related to Identity Victim # 5 and 7. *See id.* The Government will request authority to have the recovered funds applied to the Defendant's outstanding restitution balance.

### VI. Victim Impact

It is still unknown whether some victims will submit victim impact statements, address the Court at sentencing, or attend the sentencing hearing. No victim impact statements have been received. As soon as the Government is aware, we will advise the Court.

### VIII. Conclusion

For the reasons set forth above, the Government respectfully submits that the recommended sentence is a reasonable sentence, and is sufficient, but not greater than necessary, to comply with the sentencing factors set forth in 18 U.S.C. § 3553(a). The Government further requests that the Court impose a forfeiture money judgment totaling $904,843.36, order restitution totaling $948,714.10, and impose special assessments totaling $200.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

Digitally signed by PHILIP MOTSAY
Date: 2025.11.03 14:08:58 -05'00'

Philip Motsay
Assistant United States Attorney

Cc:

Allan Rombro, Esquire (by CM/ECF and electronic mail)
Nicole Wonneman, U.S. Probation Officer (by electronic mail)